ABNER CHERNIS. LLP
ANTHONY ABNER (SBN 152052)
aabner@abnerchernis.com
3110 Main Street, Suite 205
Santa Monica, CA 90405
Telephone: 310 566-4388
Facsimile: 310 382-2541
www.abnerchernis.com

Attorney for Plaintiff,
FRANCESCA PADUANO



FILED
CLERK, U.S. DISTRICT COURT

AUG - 1 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

FRANCESCA PADUANO, an individual

                    Plaintiff,

vs.

CITIMORTGAGE, INC., a Missouri corporation, NORTHWEST TRUSTEE SERVICES, INC. , a Washington corporation, EMORY FINANCIAL, a California corporation, and DOES 1 through 25 inclusive,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **CV13-05550-**CHS (PSWx)

CIVIL COMPLAINT FOR:

1. **Violation of California Home Owner Bill of Rights** (Cal. Civ. Code §§ 2923.55, 2923.6, 2924.12 and 2924.17);

2.  **(2) Breach of Contract;**

3.  **Breach of Covenant of Good Faith and Fair Dealing;**

4.    **(4) Fraud and Deceit, and/or Negligent Misrepresentation;**

5.    **(5) Negligence** (Cal. Civ. Code §§ 1714(a) and 3333)

6.    **(6) Violation of RESPA** (12 U.S.C. § 2605(e))

7.    **Violation of Unfair Competition Law** (Cal. Bus. & Prof. Code § 17200 et seq.)

DEMAND FOR JURY TRIAL]

-1-

COMPLAINT

Plaintiff, FRANCESCA PADUANO, by and through her attorney , hereby complains and alleges as follows:

## I. INTRODUCTION

1. Small business owners and home owners have been hit especially hard by the economic downturn during the past several years. Many economists have cited irresponsible and anti-social activities of the major financial institutions as a primary cause of the recent economic downturn. Plaintiff Francesca Paduano ("Plaintiff") is a small business owner and home owner who has suffered greatly. Ms. Paduano purchased a condominium in 2006 and was persuaded by the employ of predatory lending techniques and practices to enter into an unconscionable adjustable rate ARM loan and make a 20% cash down payment during the "boom" years by Defendant CitiMortgage, Inc. ("Citi") and Citi's agent the mortgage broker Emory Financial. The result was more debt than Ms. Paduano could afford to pay, which Defendants knew would be the case when they provided the loan to the Plaintiff. Unfortunately, instead of working with Plaintiff to resolve these issues, Citi forced Plaintiff to engage in a Sisyphean task of complying with a labyrinth of document productions and navigating a multilayered bureaucracy trying to receive a mortgage modification in order to reduce her debt and monthly payments to a manageable amount and reform her unconscionable ARM loan.

2. In November 2010, Citi advised Ms. Paduano that her loan had been approved for modification and on her February billing statement Citi showed it established an escrow account for her trial payments.  Without explanation Citi then reversed itself in January 2011 and denied Ms. Paduano's modification application, asserting that Citi's own "NPV" (Net Present Value) calculations indicated that for the "Investors" in the note secured by Ms. Paduano's mortgage, it would be more profitable to foreclose on the property (then worth approximately $125,000 less

than the amount of the note) than it would be to modify her mortgage. Therefore, Citi refused to modify Ms. Paduano's unconscionable ARM mortgage and rejected her 2010 modification request. Modifying Plaintiff's loan using the guidelines Citi provided to Ms. Paduano would have created a loan with NPV of between $27,774 to $73,509 (assuming an annual inflation rate of 1.5% to 4%). Citi refuses to (and indeed cannot) provide an explanation as to how a loss of between $82,397-$125,000 is better NPV result than a $73,509 profit.

3. As a result of the Citi's conduct, Plaintiff has been forced to take on significant debt, deplete her savings and lose her 800 credit score in order to continue to make payments on her loan. Ultimately Ms. Paduano could no longer make the current payments on her loan, she has received notification from Citi that her home may be sold at Trustee's sale. Ms. Paduano's previously excellent credit has been tarnished and significantly damaged. All of this is now coming to a head at a time when Plaintiff is beginning to get back on her feet, she has secured three part time faculty positions teaching Italian language at area community colleges and her small business in private cultural and relocation consulting is growing.

4. While requiring Ms. Paduano to comply with a Kafkaesque process, Citi employees provide conflicting and contradictory instructions; Citi delays the processing of Ms. Paduano's loan modification applications for failing to follow one or the other conflicting and contradictory instructions, and Citi then uses erroneous and inaccurate information in its NPV models: including, grossly understating Ms. Paduano's income and over estimating the current market value of the property.

5. Citi has illegally instituted non-judicial foreclosure proceedings on Ms. Paduano's residence while it reviews her modification application. California has

COMPLAINT

expressly prohibited such so-called "dual tracking" in which a bank simultaneously proceeds with non-judicial foreclosure while a borrower has a complete loan modification application in review.

6. Citi has acted in bad faith and refused to deal fairly in reviewing Ms. Paduano's modification applications. Ms. Paduano is now married, gainfully employed and ready, willing and able to pay and maintain a modified mortgage consistent with the modification guidelines Citi has provided to Plaintiff.

7. Citi has engaged in a series of transactions assigning one hundred percent of Ms. Paduano's mortgage note and has failed to record those assignments or to make corresponding assignments of the mortgage deed which secures Ms. Paduano's note. Citi has provided Plaintiff with a written record evidencing the assignments of 100% of her note. Based upon this information, Plaintiff believes that Citi is no longer the beneficial owner of her note.

## II. PARTIES

### A. Plaintiff

8. Plaintiff Francesca Paduano is, and at all times herein was, a resident of Los Angeles County, California.

### B. Defendants

9. Defendant CitiMortgage, Inc., ("Citi") was formerly known as CitiCorp Mortgage, Inc. formed in 1979. Citi is a subsidiary of Citibank, a National Association organized under the laws of the United States. Citi's principle place of business in O'Fallon, MO.

-4-
COMPLAINT

10. Defendant Northwest Trustee Services, Inc.("Northwest") is a Washington Corporation doing business in the City of Santa Ana in Orange County, California.

11. Defendant Emory Financial is believed to be, on that basis Plaintiff alleges that Emory Financial is a California corporation with mortgage brokering offices in Los Angeles County.

**C. Other Defendants**

12. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 25 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff alleges that each of said fictitious Defendants is in some manner responsible for the acts hereinafter set forth. Plaintiff will amend this Complaint to show the true names and capacities of these DOE Defendants, as well as the manner in which each fictitious Defendant is responsible, when these facts are ascertained.

**D. Agency**

13. Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned each of the Defendants was an agent, servant, employee, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts.

**E. Aiding and Abetting/Conspiracy**

-5-

COMPLAINT

14. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**F. Alter Ego**

15. There is a unity of interest between Defendants, and each acts as the alter ego of the other.

### III. VENUE AND JURISDICTION

16. This Court has jurisdiction under 28 U.S.C. §§ 1332 in that Plaintiff is a citizen of California, Defendant CitiMortgage, Inc., is a corporation organized in the State of Missouri, and Defendant Northwest Trustee Services, Inc. is a corporation organized in the State of Washington and therefore jurisdiction lies with this court as a result of the diversity of the States of domicile of parties and because the controversy revolves around a property and mortgage deed of trust valued in excess of $75,000.

17. This Court further has jurisdiction under 28 U.S.C. §§ 1331 and 1367 in that Plaintiff is an intended, third-party beneficiary to a contract between Citi and the U.S. Treasury that was entered into pursuant to and under the direction of the Troubled Asset Relief Program ("TARP"). 12 U.S.C. § 5201 et seq.

18. This Court further has jurisdiction under 15 U.S.C. § 1601–1667(f) and *12 U.S.C. § 2601 et seq.*, respectively in that Defendant Citi violated TILA by intentionally misstating Plaintiff's income to make them a loan they could not

COMPLAINT

afford, and failing to provide Plaintiff complete and executed copies of the Notice of Right to Cancel and the Truth–In–Lending Statement within three days of consummating the loan. Similarly, Defendants' course of conduct violated RESPA, when Defendants failed to provide Plaintiff a Good Faith Estimate within three days of completing the loan process and failed to timely respond to Plaintiff's numerous qualified written requests.

19. This court has the discretion to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

20. This Court has personal jurisdiction over the parties in this action by the fact that Defendants are corporations that are licensed to do business in the state of California or otherwise conduct business in the state of California, the Plaintiff resides in California and the property which is the collateral for the note and mortgage deed of trust is located in California.

21. Venue is proper in this Court as the unlawful practices and conduct are alleged to have been committed in Los Angeles County, California. Plaintiff's home, which is the subject of this litigation, is in Los Angeles County, California, and all Defendants regularly conduct business in this district.

## IV. TOLLING OF STATUTES OF LIMITATION BY FRAUDULENT CONCEALMENT

22. Any applicable statutes of limitation have been tolled by Defendants' continuing, knowing and active concealment of the facts alleged herein. By virtue of Defendants' concealment and misrepresentations to Plaintiff, Plaintiff could not and did not discover Defendants' actions.

23. In the alternative, Defendants should be estopped from relying on any statutes of limitation. Defendants owed Plaintiff an affirmative duty of full and fair

disclosure, but knowingly failed to honor and discharge such duty. Finally, Defendants' conduct is not barred by any statutes of limitation because Defendants' conduct constitutes an ongoing violation of Plaintiff's rights, which continues to the present.

## V. FACTUAL ALLEGATIONS

### A. The Foreclosure Crisis

24. For the past three years, the United States has been in a foreclosure crisis. In late 2009, one in eight U.S. mortgages was in foreclosure or default, and 2.8 million homeowners received foreclosure notices in 2009.

25. California has been one of the states hardest hit by this crisis. California had the highest number of foreclosures in the United States for all of 2009. Realty Trac reports that the number of total California properties with foreclosure filings in 2009 was 632,573. This represents a nearly 21% increase over 2008 and a 153% increase from 2007. In the first quarter of 2010, California posted the nation's fourth highest foreclosure rate; during that period, California accounted for 23% of the nation's total foreclosure activity. In 2011 the families of the United States experienced 3,920,418 foreclosures.

26. The foreclosure crisis "continues unabated," as a Congressional oversight panel stated in April 2010, and is frequently citied as a primary factor in the sluggishness of the American recovery and lingering high unemployment.

### B. The HAMP Program

27. Congress passed the Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5201 et seq., on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115, on February 17, 2009 (together, the "Act").

28. The purpose of the Act was to grant the Secretary of the Treasury the authority

COMPLAINT

to restore liquidity and stability to the financial system, and to ensure that such authority is used in a manner that "protects home values" and "preserves homeownership." 12 U.S.C. § 5201.

29. The Act granted the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program, or TARP. 12 U.S.C. § 5211 et seq. Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions. Id. Congress allocated up to $700 billion to the Treasury for TARP. 12 U.S.C. § 5225.

30. The Act further mandates, with regard to any assets acquired by the Secretary of the Treasury that are backed by residential real estate, that the Secretary "shall implement a plan that seeks to maximize assistance for homeowners" and use the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures." 12 U.S.C. § 5219. The Act grants authority to the Secretary of the Treasury to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures." Id.

31. On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency created the Making Home Affordable ("MHA") initiative to help at-risk homeowners avoid foreclosure by restructuring their mortgages.

32. The Home Affordable Modification Program, or HAMP, is the portion of the MHA initiative that provides mandatory directives for implementation, and with which Citi has not complied. HAMP creates a uniform loan modification protocol, and provides financial incentives for participating servicers to modify loans. The Treasury Department has allocated at least $75 billion in federal funds to HAMP, of which at least $50 billion is TARP money, to keep up to "3 to 4 million homeowners" in their homes by 2012.

COMPLAINT

## C. Citi's Obligations Under HAMP

33. Citi accepted approximately $50 billion in federal funds and additional loan guarantees under TARP, of which over $20 billion was a direct cash infusion to CitiGroup (parent company of Citi) of taxpayer funds. As a result, it was and is required to participate in HAMP for the loans on which it functions as a loan "servicer.". The U.S. Government Accountability office report of July 23, 2009 reported that Citi executed a Servicer Participation Agreement ("SPA") with the federal government on April 13, 2009. (See GAO report number GAO-09-837 "Troubled Asset Relief Program: Treasury Actions Needed to Make Home Affordable Modification Program More Transparent and Accountable")[i]

34. The SPA executed by Citi explicitly incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications," referred to as "Supplemental Directives" issued by the Treasury, Fannie Mae or Freddie Mac in connection with HAMP. These documents together are referred to as the "Program Documentation" (SPA I.A.), and are incorporated by reference herein. The SPA mandates that a Participating Servicer "shall perform" the activities described in the Program Documentation "for all mortgage loans it services." SPA I.A., 2.A.5.

35. Fannie Mae issued the first "Supplemental Directive" ("SD 09-01") in April, 2009.[2] That Directive, together with others issued since, sets out the activities Citi must perform "for all mortgage loans it services." (SPA § 2.A.)

36. First, Citi must evaluate all borrowers who are sixty or more days in default, in "imminent default," or who request a loan modification to see if the loan and borrower meet basic eligibility criteria.[3] (SD 09-01 at 1-2, 3-4.)

37. Next, the Servicer is required to calculate whether, by taking certain

modification steps, such as reducing the interest rate or extending the term of the loan, the borrower's total housing payment can be reduced to 31% of the borrower's monthly income. (SD 09-01 at 8-10; HAMP Checklist at 6.) Finally, the Servicer must perform a "net present value" ("NPV") analysis, comparing the net present value of cash flow from these modified loan terms to the NPV of the loan without modification. (SD 09-01 at 4-5; NPV Overview; HAMP FAQs at 27-29, Q2314.)

38. If the NPV test yields a "positive" outcome (i.e., the value of a performing modified loan exceeds the value of foreclosing the property), the Servicer is required to offer a trial modification, or "Trial Period Plan," ("TPP") under HAMP. (SD 09-01 at 4, 14-15.) Having gone through the analysis described in the preceding paragraph, the Servicer knows, prior to offering the TPP, all of the material terms of the proposed modification. If the NPV test yields a "negative" outcome, the servicer is required to consider the borrower for other foreclosure prevention measures. (SD 09-01 at 4; SD 09-08 at 2-3.)

39. The TPP consists of a three-month period in which the homeowner makes mortgage payments based on adjusted loan terms derived from the steps followed by the servicer under HAMP. (SD 09-01 at 17-18; SD 10-01 at 8.)

**D. Plaintiff's Purchase Of Her Home And the Subject Loans**

40. In August 2006, Plaintiff purchased her home, located at 840 East Green Street, Unit 327, Pasadena, CA 91101 (the "Home"). Plaintiff paid a $105,000 down payment and Plaintiff obtained a loan for the remaining $420,000 (the "Loan"). Plaintiff was a newly minted Ph.D. beginning her first job, a one year engagement as visiting professor of Italian language and culture at Scripps College in Claremont, CA and she operated a small business providing private language

instruction and relocation services for global executives relocating to the Los Angeles area.

41. In August of 2008, Plaintiff was suffering financially. Her small business faltered and her position at Scripps College had expired and was not renewed. Plaintiff ultimately secured an assistant professorship at Pepperdine teaching Italian language and culture to undergraduate students; however the Pepperdine Assistant Professor position provided a lower salary than the Scripps College salary and the commute to Pepperdine left Plaintiff with much less time for her small business activities (consulting, translating and private tutoring) and therefore Plaintiff's total income was greatly reduced.

42. Plaintiff's monthly expenses exceeded her income, and she was forced to deplete her savings in order to pay her mortgage.

**F. Plaintiff's Attempts To Modify The Loan With Citi**

43. In April 2010, Plaintiff contacted Citi to request a modification to the Loan in order to reduce her monthly payments and attempt to avoid defaulting. In June 2010 Plaintiff filed a formal written application for loan modification with Citi, in compliance with Citi's guidelines. In November 2010, Citi advised Ms. Paduano that she had been preliminarily approved for loan modification, but Citi needed some residual information for "final approval." Ms. Paduano provided the information in November 2010 and was advised she was approved for modification and would be set up for a reduced trial payment plan.

44. In January 2011 Plaintiff received a billing statement for the month of February 2011 from Citi showing the establishment of an escrow account which was to take her new trial payments. Later in January 2011 Citi advised Plaintiff that Citi was reversing itself and would now deny Plaintiff's loan modification request. Citi outlined it's modification program guidelines as providing a floor interest rate of

-12-

COMPLAINT

2% fixed for 40 years (480 months) with a forbearance limit of 30% of the principal Loan balance. **A modification of Plaintiff's loan, using Citi's cited guidelines, would have yielded a monthly payment of $890.31 on a $294,000 loan, which the Plaintiff could well have maintained. According to Citi's own NPV computation the market value of the Home at that time was $337,603, meaning that Citi would lose $82,397 if the Home was foreclosed on rather than a profit of $133,347.54 by modifying the Loan pursuant to its own guidelines. Plaintiff's FICO credit score at this time was 771.**

45. In February 2011, Plaintiff secured additional employment and increased income and made a new application for modification with her increased income. Throughout the balance of 2011 Plaintiff complied with Citi's iterative information requests. Citi lost Plaintiff's application, financial records and correspondence numerous times, and required Plaintiff to re-copy and re-transmit all 97 pages of her employment information, financial and bank statements, hardship affidavit and tax filings over and over again. Every few weeks a new Citi employee was assigned to Plaintiff's application and the new employee instructed Ms. Paduano to resend all 97 pages once again. All the while Plaintiff struggled to pay her bills and her mortgage, and further eroded her savings, and incurred legal bills trying to obtain fair treatment from Citi to keep her Home.

46. In November 2011 Plaintiff was advised by Citi personnel that some loans in actual default receive a more expedited modification review, and that Citi may have a different view of the NPV of a loan should it it in default. Plaintiff ceased making mortgage payments, and continued to seek a loan modification.

47. On November 14, 2012 Citi filed and recorded a Notice of Default despite the fact that Citi was then ostensibly actively working with Plaintiff on modifying Plaintiff's loan.

48. In December 2012 Citi confirmed that Citi at last had all of Plaintiff's information and a complete modification application package had been submitted to Citi's underwriters. Citi stated that they would advise Plaintiff of Citi's decision on her application and make any modification proposal within 30 days.

49. **On January 8, 2013 Citi sent Plaintiff a letter advising her that Citi maintains an official policy under which Citi may continue foreclosure proceedings while reviewing Plaintiff's application for loan modification.**

50. On February 22, 2013 Plaintiff received a Notice of Trustee's Sale of her Home, filed by Defendant Northwest Trustee Services, Inc. The Trustee sale date was March 19, 2013.

51. On March 8, 2013 Plaintiff's counsel wrote a demand letter to Citi, informing Citi that California law and Citi's agreements with the State's Attorney General prohibit Citi from engaging in foreclosure proceedings while Citi is actively engaged in a loan modification review or negotiation, and demanding that Citi cease and desist from any foreclosure action on Plaintiff's Home, and also requesting that Citi comply with prior written requests and produce the demanded documentation Plaintiff was entitled to receive.

52. On March 13, 2013 Plaintiff's counsel also obtained a written commitment from Citi Employee Mr. Patrick Hadigan not to proceed with any foreclosure proceedings while the loan modification was under review, and the promise to instruct the Defendant Northwest to cease and desist from any scheduled Trustee's sale.

53. On March 14 and March 15, 2013 Plaintiff's counsel corresponded with Defendant Northwest, who confirmed that the Plaintiff's Home did show a 'hold' in the Northwest's computer system, but that the scheduled Trustee's sale would occur nonetheless on March 19, 2013.

54. On March 18, 2013 Plaintiff's counsel sent Defendant's Northwest and Citi Notice of Ex Parte Application for Temporary Restraining Order and Preliminary Injunction Enjoining Trustee Sale.

55. On March 18, 2013 following the receipt of the Plaintiff's Ex Parte Notice, counsel for Defendant Northwest contacted Plaintiff's counsel and confirmed that the Notice of Trustee Sale was formally cancelled, and that no Trustee sale of Plaintiff's Home would occur without first filing and recording a new Notice of Trustee's Sale.

56. On May 27, 2013 Citi advised Plaintiff that she was denied modification assistance because Citi's calculations showed they could not create an affordable loan payment equal to 31% of Plaintiff's income without granting a forebearance in excess of 30% of the amount owing on the loan. This is an arbitrary, capricious and erroneous conclusion without any support. Plaintiff can clearly afford to pay a mortgage of $890.31, and has documented as much to Citi.

57. On May 29, 2013 Citi provided the detailed inputs Citi used in arriving at this determination not to grant modification. Citi cites Plaintiff's gross income of $2,173.46 although Plaintiff's actual gross income as documented and provided to Citi is $4,720. **Citi simply ignores $2,546.54 of Plaintiff's monthly income, ie more than half of Plaintiff's income.**

58. On June 19, 2013 Plaintiff appealed Citi's determination to deny loan modification to Plaintiff, again providing Citi with documentation of Plaintiff's gross monthly income of $4,720 and further advising Citi that Plaintiff's husband was now covering some expenses of Plaintiff other than her mortgage and HOA dues.

59. On June 27, 2013 Citi responded to Plaintiff's appeal, again denying Plaintiff's request for a modification now citing an even further reduced statement of

-15-

COMPLAINT

Plaintiff's gross monthly income of $1,458.34. **Thus in Citi's reconsideration Citi ignores $3,261.66 in Plaintiff's income in order to arrive at the conclusion that Plaintiff cannot afford an $890.31 monthly mortgage. In Citi's reconsideration, Citi has imposed erroneous and even less favorable and incorrect data inputs when assessing Plaintiff's appeal. Citi is either negligently applying its own and HAMP guidelines or Citi is intentionally manipulating its computations to further efforts to illegally foreclose upon Plaintiff's Home.**

60. Citi's repeated arbitrary and capricious erroneous assignment of income to Plaintiff and extensive history of frustrating Plaintiff's attempts to obtain the loan modification that Citi has itself advertised to homeowners, including Plaintiff, seeking modification: principal reduction of 30% and re-issue a 30 year fixed loan at 2% interest in the new principal amount, demonstrate that **Citi's processes are designed to arrive at a pre-determined result: denial of Loan modification and foreclosure.** Citi's bad faith and Citi's failure to abide by its obligations under TARP, it's agreement with the State's Attorney General, the California Homeowner's Bill of Rights and the laws of California more generally.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION BREACH OF CALIFORNIA HOMEOWNER BILL OF RIGHTS

### (California Civil Code §§2923.55, 2923.6, 2924.12 and 2924.17 Against Defendants Citi and Northwest)

61. Plaintiff realleges each and every allegation above as if set forth in its entirety in this Cause of Action.

62. In recognition of the great harm done to the State of California and the citizens of the State by the historical predatory lending practices, abusive loan servicing practices and unfair foreclosure practices of banks such as Defendant Citi, the California legislature enacted the California Homeowner Bill of Rights codified in the California Civil Code §§2923.55, 2923.6, 2924.12 and 2924.17.

63. Quoting the Legislature in regard to California Civil Code § 2923.4.

> The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.

64. Further in 2923.6(b) "It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."

65. Defendant Citi has provided no meaningful opportunity to Plaintiff to obtain a loan modification, instead Citi has constructed a bureaucratic apparatus which operates to frustrate Plaintiff's efforts to obtain a modification or other loss mitigation options purportedly offered by Citi.

66. In assessing Plaintiff's application Citi consistently and persistently uses incorrect gross income data for Plaintiff, overstates the value of the Home, and manipulates the inputs on Citi's NPV calculation and computation in a manner that violates Citi's duty to Plaintiff and Plaintiff's rights under the California Homeowner Bill of Rights.

67. California Civil Code § 2923.6 expressly prohibits Citi from filing and recording a Notice of Trustee Sale or pursuing any foreclosure proceeding s while Plaintiff's loan modification application is under review. Citi sent Plaintiff a letter announcing its policy of dual tracking, in contravention of California law, and then

despite Plaintiff's objections Citi and Northwest did filed and recorded a Notice of Trustee's sale of Plaintiff's Home and did schedule nonjudicial foreclosure auction.

68. Only the threat of Plaintiff's counsel to bring Citi before this court to answer for its illegal and wrongful actions persuaded Citi and Northwest to cancel the illegal Trustee's sale. Citi has not revoked or canceled its Notice of Default, and Plaintiff's Home is at this moment under imminent threat from Citi's and Northwest's illegal conduct.

69. Plaintiff is continuing to seek a loan modification with Citi, and is appealing Citi's use of incorrect and erroneous gross income data for Plaintiff, among other material defects in Citi's NPV model.

70. During this period Citi and Northwest should remove lift the Notice of Default from the Home and not attempt to exert unfair bargaining power, undue influence or duress upon Plaintiff as Citi and Plaintiff negotiate a loan modification, or this Court should enjoin Citi's illegal and wrongful behavior.

## SECOND CAUSE OF ACTION BREACH OF CONTRACT

### (Breach of Contract Against Defendant CitiMortgage, Inc.)

71. Plaintiff realleges each and every allegation above as if set forth in its entirety in this Cause of Action.

72. On July 23, 2009 Citi and the United States (through Fannie Mae acting as Financial Agent of the United States) entered into the Servicer Participation Agreement ("SPA") which is a valid and enforceable contract.

73. Plaintiff is an intended third-party beneficiaries under the SPA, and the SPA states the express intention that "homeowners who are in default and... who are at

-18-

COMPLAINT

imminent risk of default" be granted modification to reduce "monthly payments to sustainable levels." (SD 09-01 at 1.)

74. By entering into the SPA, Citi agreed to comply with the requirements set forth in the SPA and the Program Documentation incorporated by reference into the SPA. In exchange, Treasury agreed to pay certain amounts set forth in the SPA and the Program Documentation to Citi in consideration of its compliance with the SPA.

75. The central purpose of the SPA is to ensure that borrowers whose loans are serviced by Citi and who are eligible for loan modifications under HAMP are properly considered for modification in compliance with the Program Documentation requirements incorporated in the SPA.

76. Citi failed to perform under its SPA contracts in a manner that directly impacts Plaintiff. Citi's refusal to perform the SPA contracts was unlawful, without justification and/or excuse, and constituted a total and material breach of the SPA.

77. Citi breached the SPA by doing, inter alia, the following:

a. Failing to properly determine whether Plaintiff qualifies for HAMP modifications by checking investor restrictions and/or performing a proper NPV test;

b. Imposing requirements on Plaintiff not permitted under the SPA and Program Documentation;

c. Failing to follow the process required to determine eligibility for modifications, including, without limitation, failing to consider documentation properly submitted in support of Plaintiff's HAMP applications, and demanding documentation that was not required;

COMPLAINT

d. Failing to obtain waivers or approvals from the investor, if necessary, to carry out modifications under HAMP; and

e. fabricating false and erroneous data inputs to yield inaccurate NPV test computations and HAMP assessments.

78. As a result of Citi's breach of the SPA, Plaintiff suffered and will continue to suffer reasonable and foreseeable consequential damages, including payment of increased interest, longer loan payoff times, higher principle balances, deterrence from seeking other remedies to address her default and/or unaffordable mortgage payments, damage to her credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages for breach of contract.

79. Plaintiff has been damaged by Citi's breach of the SPA contract in an amount to be proven at trial.

80. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover reasonable attorney' fees, costs, and expenses incurred in bringing this action.

## THIRD CAUSE OF ACTION BREACH OF COVENANT OF GOOD

## FAITH AND FAIR DEALING (Breach of Covenant of Good Faith and Fair Dealing Against All Defendants)

81. Plaintiff realleges each and every allegation above as if set forth in its entirety in this Cause of Action.

## Against Defendant CitiMortgage, Inc.

-20-

82. Under common law, a covenant of good faith and fair dealing is implied in every contract, including the written and oral contracts described above, which prevents one contracting party from unfairly frustrating the other party's right to receive the benefits of the contract. Citi is obligated to act in good faith and deal fairly Plaintiff pursuant to the oral contract to modify the Loan.

83. Citi has violated and continues to violate this covenant of good faith and fair dealing by doing, inter alia, the following:

a. Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff;

b. Failing to properly supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel, and personnel implementing its modification programs;

c. Failing to permanently modify loans and/or provide alternatives to foreclosure and using unfair means to prevent modification of the Loan, including, without limitations, routinely demanding information it already had and failing to communicate accurately or consistently with Plaintiff about the status of her loan modification applications;

d. Making inaccurate calculations and determinations of Plaintiff's eligibility for trial or permanent modifications;

e. Failing to respond, or respond in a timely manner, to Plaintiff's request to be evaluated for a modification under HAMP, even after Plaintiff provided all information requested by Citi;

f. Shuffling and transferring Plaintiff back and forth between different

-21-

COMPLAINT

representatives, who often providing conflicting information and instructions;

g. Failing to properly determine whether Plaintiff qualified for HAMP modifications by checking investor restrictions and/or properly performing an NPV test;

h. Imposing requirements on Plaintiff not permitted under the SPA and Program Documentation;

i. Failing to follow the process required to determine eligibility for modifications, including, without limitations, failing to consider documentation properly submitted in support of Plaintiff's HAMP applications, and demanding documentation that is not required;

j. Failing to obtain waivers or approvals from the investor, if necessary, to carry out modifications under HAMP;

k. Failing to timely convert temporary modifications into permanent modifications in the manner required by the SPA;

l. Failing to dedicate sufficient resources to properly operate the HAMP program, and transferring persons whom Plaintiff had contact with out of the modification department so as to avoid allowing Plaintiff to contact the same person at Citi regarding the status of her modification;

m. Telling Plaintiff, who mailed or faxed requested information to Citi that Citi did not receive the requested information;

n. Telling Plaintiff that she does qualify for a modification, then failing to send an official trial plan agreement or permanent modification agreement;

o. Telling Plaintiff, without legitimate basis, that they will "work" with them to get

a permanent modification, then failing to do so and denying the modification; and

p. Intentionally setting up its loan modification program to fail.

84. Plaintiff remains ready, willing, and able to enter into permanent HAMP modifications.

85. As a result of Citi's breach of this implied covenant, Plaintiff suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including payment of increased interest, longer loan payoff times, higher principle balances, and other damages.

### Against Defendant Emory Financial

86. Under common law, a covenant of good faith and fair dealing is implied in every contract, including the contract between Plaintiff and Citi which resulted in the origination of the Loan, which prevents one contracting party from unfairly frustrating the other party's right to receive the benefits of the contract.

85. Additionally, as broker and fiduciary for the loans, Emory Financial owed an independent duty to Plaintiff to act in good faith to make, and facilitate the making of, decisions in Plaintiff's best interests.

87. Emory Financial violated this covenant of good faith and fair dealing in its contracts with Plaintiff to broker the Loan by doing, inter alia, the following:

a. Steering Plaintiff into two no document, interest only loans with reason to know that Plaintiff had no ability to repay the loans;

b. Completing the loan applications for Plaintiff and ensuring that they would qualify for the Loans;

-23-

COMPLAINT

c. Failing to disclose the predatory nature of the loan agreements to Plaintiff;

d. Relying upon appraisals of Plaintiff's Home which it knew to be unreasonably inflated and crafted solely for the purpose of ensuring that Plaintiff would qualify for the Loan; and

e. Failing to disclose to Plaintiff the risks involved in obtaining the Loan; and

88. Defendant Emory Financial's behavior caused Plaintiff to enter into the Loan. As a result, Plaintiff's credit has been destroyed, Plaintiff has been forced to borrow excessive amounts of money, the equity has been stripped from her home and she are facing foreclosure.

89. Plaintiff has been damaged by Emory's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

90. Plaintiff has been damaged by Citi's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

91. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses incurred in bringing this action.

## FOURTH CAUSE OF ACTION FRAUD AND DECEIT AND/OR NEGLIGENT MISREPRESENTATION

### (Fraud and Deceit, and/or Negligent Misrepresentation Against All Defendants)

92. Plaintiff realleges each and every allegation above as if set forth in its entirety in this Cause of Action.

-24-

COMPLAINT

93. Defendants colluded in the facilitation and procurement of the Loan, which were predatory in nature and injurious to Plaintiff.

94. Defendants at various times throughout the origination and servicing of the Loan knowingly misrepresented, inter alia, the following:

a. The nature and terms of the loans;

b. That the loans were a good financial decision for Plaintiff;

c. The modification process of the loans; and

d. The value of the Plaintiff's Home which was used to justify the loans.

95. Defendants knowingly or negligently defrauded Plaintiff, causing her to agree to enter into loans which Defendants knew Plaintiff was unlikely to ever be able to pay off. Because of Plaintiff's desperation and desire to stay in her Home, she justifiably relied on Defendants' misrepresentations about the terms of the loans, her ability to afford the loans and the value of her home. This reliance was detrimental to the Plaintiff.

96. Defendant Citi falsely represented to Plaintiff that her loan modification application was being reviewed in good faith. Citi knew this was false, per its own policies and procedures intended to illegally pursue foreclosure on Plaintff's Home while providing false assurances regarding the Loan modification.

97. Defendant Emory Financial committed fraud when it knowingly misrepresented Plaintiff's income and citizenship status on the loan applications. Plaintiff did not report, nor was she asked to report her actual income for the purpose of determining whether they qualified for the loans. Defendant Emory Financial knew of the falsity because, Plaintiff provided to Emory Financial copies

-25-

COMPLAINT

of her employment pay stubs.   Emory Financial intentionally entered the false information on the applications in order to qualify Plaintiff for a predatory loan which she had no ability to repay.

98. It was in Emory Financial's best interest to see that all loans it brokers be consummated, regardless of ability to repay or propriety of entering into the loans. Plaintiff justifiably relied on Defendant Emory Financial to comply with reasonable standards of professional conduct and ethics in using its expertise to match her with an appropriate loan product.

99. As a result of Defendants' misrepresentations, Plaintiff has been damaged in an amount to be proven at trial.

100. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses incurred in bringing this action.

## FIFTH CAUSE OF ACTION NEGLIGENCE

### (Negligence - Cal. Civ. Code §§ 1714(a) and 3333 Against All Defendants)

101. Plaintiff realleges each and every allegation above as if set forth in its entirety in this Cause of Action.

102. All Defendants owed a duty of care to avoid foreseeable injury to Plaintiff's person or property. Defendants breached that duty by colluding to lure Plaintiff into predatory loans that Defendants knew or should have known Plaintiff would eventually default on.

103. As a direct and foreseeable result of Defendants' behavior, Plaintiff suffered harm, including but not limited to the destruction of her credit, being forced to

-26-

COMPLAINT

borrow excessive amounts of money, having the equity stripped from her home and, now, facing foreclosure.

104. Defendant Citi processed and approved the Loan under a "Stated Income" program that requires employment verification but does not require income verification.

105. Citi had a duty to investigate the reasonableness of the stated income and confirm that Plaintiff had the ability to repay the loans. Citi breached that duty when they qualified Plaintiff for the Loans based on the overstated income supplied by Defendant Emory Financial.

106. Citi also breached their duty when they qualified Plaintiff for the initial interest-only payment, with knowledge that the initial interest-only payment was scheduled to convert to a fully amortized payment. Citi failed to qualify Plaintiff at the fully indexed, fully amortized payment amount. The interest only ARM product which Citi sold to Plaintiff is an unconscionable loan product especially when Citi performs no due diligence on a borrowers ability to repay the loan, and holds the borrower's home as collateral for the loan. The interest only ARM is a financial time bomb designed to deprive a borrower of her property if the loan is not refinanced.

107. Defendant Emory Financial was negligent in directing Plaintiff into a loan for which she was not qualified. Emory Financial was Plaintiff's broker in the origination of the Loan. As Plaintiff's broker and fiduciary, Emory Financial owed a duty to Plaintiff to execute decisions in the best interests of the Plaintiff. Emory Financial breached that duty when it negligently qualified Plaintiff for a loan without reasonable (or any) investigation into whether or not Plaintiff could sustain payments on the loan. Defendant made no effort to educate Plaintiff as to the

nature, risks or possible consequences associated with the loans.

108. As a result of Defendants' conduct, Plaintiff has and will continue to suffer reasonable and foreseeable consequential damages resulting from such actions and representations, including payment of increased interest, longer loan payoff times, higher principle balances, deterrence from seeking other remedies to address her default and/or unaffordable mortgage payments, damage to her credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages for breach of contract.

109. Plaintiff has been damaged by Defendants' actions and representations in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION VIOLATION OF RESPA

### (Violation of 12 U.S.C. § 2605(e) (RESPA) - Failure to Respond to QWR Against Defendant Citi)

110. Plaintiff realleges each and every allegation above as if set forth in its entirety in this Cause of Action.

111. Plaintiff sent a QWR to Defendant Citi on five occasions: August 30, 2011, September 13, 2011, October 12, 2011, March 14, 2012 and April 28, 2012. Pursuant to 12 U.S.C. § 2605(e)(2), Defendant had sixty (60) days to respond to the QWR and twenty (20) days to acknowledge receipt of the QWR.

112. The QWR's from Plaintiff to Citi stated the name of Plaintiff and her account numbers, information sufficient to identify the account of the borrower. Each letter further stated it was a "Qualified Written Request" under RESPA. Each letter requested information to confirm that Citi was properly applying mortgage

payments, as well as a loan transaction history, MERS milestone report, identifying information to allow Plantiff to access the applicable loan Pooling and Servicing Agreement among other items..

113. Citi violated RESPA because it failed to provide a written response acknowledging receipt of the first QWR within 20 days of the receipt of the first request. Citi also failed to respond to the QWR's in a timely manner, and Citi never provided all of the requested information.

114. In a response to Plaintiff's counsel March 21, 2013 demand for a loan transaction history, Defendant Citi produced a consolidated note report dated April 26, 2013 which shows 100% of the Loan was assigned on four (4) separate occasions.

115. Upon information and belief, Citi has violated RESPA, 12 U.S.C. § 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff that were related to her QWRs, and which may not be due to Citi at all.

116. Defendant Citi has engaged in a pattern and practice of non-compliance with the requirements of RESPA set forth in 12 U.S.C. § 2605, as evidenced by its failure to respond to Plaintiff's' five (5) QWRs. Upon information and belief Plaintiff alleges that Defendant Citi has engaged in a much broader pattern and practice of failing to comply with RESPA by not responding to QWRs.

117. As a result of Citi's violations of RESPA Plaintiff has suffered actual damages, including but not limited to devastation of her credit, monetary damages, and threatened foreclosure of her home.

118. Pursuant to 12 U.S.C. § 2605(f)(1)(B), Plaintiff is entitled to statutory

COMPLAINT

damages in the amount of $2,000 per violation plus her actual damages.

119. Pursuant to 12 U.S.C. § 2605 (f)(3), Plaintiff is entitled to reasonable attorneys fees in connection with this action.

## SEVENTH CAUSE OF ACTION VIOLATION OF THE UNFAIR COMPETITION LAW

### *(For Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq.* Against All Defendants)

119. Plaintiff realleges each and every allegation above as if set forth in its entirety in this Cause of Action.

120. The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "deceptive" business act or practice. Cal. Bus. & Prof. Code § 17200. The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Id. § 17203.

121. Citi's acts and practices alleged herein are unlawful business practices in that they violate state and law, including but not limited to violations of RESPA and Cal. Civ. Code §§ 1714(a), 2923.55, 2923.6, 2924.12, 2924.17 and 3333, as alleged in this Complaint.

122. Northwest's acts and practices alleged herein are unlawful business practices in that they violate state law, including but not limited to violations of Cal. Civ. Code §§ 1714(a), 2923.55, 2923.6, 2924.12, 2924.17 and 3333, as alleged in this Complaint.

-30-

COMPLAINT

123. Citi's acts and practices alleged herein constitute unfair business practices, including, without limitation, the following practices:

a. Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff and Citi's responsibilities under HAMP;

b. Failing to properly supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel, and personnel implementing its modification programs;

c. Failing to permanently modify loans and/or provide alternatives to foreclosure, and using unfair means to place Plaintiff in temporary modification contracts, including, without limitations, routinely demanding information it already had and failing to communicate accurately or consistently with Plaintiff about the status of her loan modification applications;

d. Making inaccurate calculations and determinations of Plaintiff's eligibility for permanent modifications; and

e. Engaging in acts and practices that prolong of the HAMP process.

124. Emory Financial's acts and practices alleged herein constitute unfair business practices, including, without limitation steering Plaintiff into a loan Emory Financial knew Plaintiff could not ever repay and breaching the fiduciary duty owed to Plaintiff in order to increase its own profits by closing the mortgage transaction.

125. Citi's acts and practices alleged herein constitute fraudulent business practices, including, without limitation, the following practices:

a. Citi made misrepresentations and omissions of material fact regarding the status

-31-

COMPLAINT

of Plaintiff's loan modifications and loan payments;

c. Citi's misrepresentations and omissions are likely to deceive the reasonable consumer, and did in fact deceive Plaintiff;

d. Citi's misrepresentations are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law, and Plaintiff did in fact believe the misrepresentations were reasonable and did in fact rely upon them.

126. Emory Financial's acts and practices as alleged herein constitute fraudulent business practices, including, without limitation making misrepresentations and omissions of material facts that induced Plaintiff to enter into a predatory loan which she could not repay.

127. Plaintiff justifiably and reasonably relied upon these misrepresentations and omissions of material facts.

128. As a result of these violations and unlawful, unfair, and fraudulent business practices, Plaintiff suffered injury in fact and lost money, including but not limited to, a down payment of over $100,000, payment of increased interest, longer loan payoff times, higher principle balances, and payment of other charges collected by Citi.

129. Pursuant to California Business and Professions Code section 17200 et seq., Plaintiff is entitled to enjoin the practice of unfairly denying and failing to enter into permanent loan modifications for homeowners who have complied with Citi's guidelines and the HAMP guidelines, and grant such other and further relief as the Court may deem proper and just.

130. Pursuant to Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For Equitable relief, including an Order for Citi to rescind all Notices of Default against Plaintiff's account and to engage in reasonable efforts to restore Plaintiff's credit to its previous standing;

2. The Court grant a Temporary Restraining Order preventing foreclosure against the Plaintiff's Home, pursuant to Cal. Civ. Code § 2924.12;

3. The Court enter a judgment declaring Citi's acts and practices complained of herein to constitute a breach of contract, and all Defendants' acts and practices complained of herein to constitute a breach of the covenant of good faith and fair dealing and to be unlawful, unfair and fraudulent as well as a declaration that Citi is required by the doctrine of promissory estoppel to offer permanent modifications of the loans to Plaintiff;

4. For injunctive relief against Defendants to prevent future wrongful conduct;

5. For actual statutory damages according to proof at trial for violations of the breach of contract, breach of covenant of good faith and fair dealing, and promissory estoppel, or in the alternative, that Citi be ordered to make restitution to Plaintiff pursuant to Cal. Bus. and Prof. Code § 17203;

6. For punitive damages pursuant to Cal. Civ. Code § 3294 et seq.;

7. For an award of attorneys' fees and costs pursuant to Cal. Code of Civ. Proc. §

-33-

COMPLAINT

1021.5, Cal. Civ. Code § 1788.17 and 1788.30(C), and 12 U.S.C. § 2605(f)(3);

8. For such other and further relief as this Court may deem proper.

Dated: July 25, 2013

Abner Chernis, LLP

By:

ANTHONY L. ABNER

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of each and every claim so triable, as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: July 25, 2013

Abner Chernis, LLP

By:

ANTHONY L. ABNER

Attorneys for Plaintiff

-34-

COMPLAINT